IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| CLINICAL INNOVATIONS, LLC, dba, CLINICAL INNOVATIONS, INC., a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br><br><br>vs.<br><br><br><br>UTAH MEDICAL PRODUCTS, INC.,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING UTAH MEDICAL'S MOTION FOR SUMMARY JUDGMENT ON NON-INFRINGEMENT AND DENYING CLINICAL INNOVATIONS' MOTION FOR SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 2:05-CV-634 TS |

This matter came before the Court on July 7, 2007 for a *Markman* hearing on claim construction and on cross Motions for Summary Judgment on infringement.

I.  INTRODUCTION

Plaintiff Clinical Innovation and Defendant Utah Medical sell intrauterine pressure catheters (IUPCs). IUPCs monitor interuterine pressure in expectant mothers. Clinical Innovations is the assignee of patent No. 6,231,524 (the '524 patent), for a "Pressure

Catheter Device with Enhanced Monitoring Features." Clinical Innovations' catheter is inserted into the human body to measure internal pressures, such as interuterine pressure during labor. Clinical Innovations alleges that Utah Medical's products infringe claims 1-3, 5-6, 8, 13-16, 18-19, 21, 23, 25, 29-30, 32-34, 36, 38, and 40 of its '524 patent.

Utah Medical denies infringement and counterclaims against Clinical Innovations for declaratory judgment of non-infringement and invalidity.

The issues before the Court at this time are claim interpretation and the cross Motions for Summary Judgment on literal infringement. "A determination of patent infringement consists of two steps: (1) the court must first interpret the claim, and (2) it must then compare the properly construed claims to the allegedly infringing device."[1] However, if the Court "considers one issue to be dispositive, [it] may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties . . . as long as the trial court construes the claims to the extent necessary to determine whether the accused device infringes . . ."[2]

## II. CLAIM CONSTRUCTION

The parties seek construction of 23 claims divided into six claims groups. Because the Court finds Utah Medical's arguments regarding disclaimer of sensor-tip configurations

---

[1] *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, __ F.3d __, 2007 WL 2215718, at *4 (Fed. Cir. Aug. 3, 2007) (citing *Cyber Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed. Cir. 1998)).

[2] *Ballard Medical Products v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001).

and means-plus-function to be dispositive of literal infringement, the Court will construe only the claims necessary to that analysis.

As recently explained by the Federal Circuit in *Gillespie v. Dywidag Systems Intern., USA*:[3]

> The claims of a patent define what is protected, *i.e.*, what a patentee has the right to exclude the public from making, using, importing, offering for sale, or selling. *See Phillips* [ ] ("It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"[4]

The words of a claim are generally given the ordinary meaning that they would have to a person of ordinary skill in the field of the invention, and are read in view of the specification, of which they are a part.'"[5]

The Federal Circuit has exhaustively set forth the principles of claim construction in such cases as *Phillips v. AWH Corp.*,[6] and the Court need not repeat them herein. Instead, mindful of those principles, the Court turns to the claims at issue.

    A.  No Integral Connection Requirement

Claims 1, 13, and 25 provide, respectively:  "A catheter for detecting changes in pressure within a body comprising . . . a structure for detecting changes in fluid pressure;"[7]

---

[3] __ F.3d __, 2007 WL 2493339 (Fed. Cir. September 6, 2007).

[4] *Id*. at *3 (quoting *Phillips v. AWH Corp*., 415 F.3d 1303, 1312 (Fed. Cir. 2005).

[5] *Id*. at 4-5 (citing *Phillips*, at 1312)).

[6] 415 F.3d at 1312-24.

[7] Claim 1.  All claim citations herein are to the '524 patent.

"An interuterine pressure catheter comprising . . . a pressure detection device;"[8] and "A pressure catheter for detecting changes in pressure within a body comprising . . . a pressure detection device."[9]

Clinical Innovations argues that these claim terms should be construed to mean:

The claimed catheter (i.e., elongated tube) is a "pressure catheter." That is, the catheter itself must be capable of detecting changes in pressure. Accordingly, the recited elongated tube of the catheter must be integrated with the recited structure for detecting changes in fluid pressure, such as by being sealed to that tube or to another integrated part of the catheter. The claim excludes any catheter with an elongated tube that can be readily connected to, or disconnected from, the pressure detecting structure.[10]

Utah Medical argues that they should be construed to mean:

A catheter that is used to detect pressure changes within a body. The claim does not require an integral connection between the elongated tube and the structure for detecting changes in fluid pressure.[11]

Clinical Innovations argues that its interpretation is supported by the language of the claims 1, 13, and 25, by claim differentiation, by the claim preamble, and because, in the specification for a balloon configuration, the elongated tube is permanently attached to the inner tube.

Utah Medical argues that Clinical Innovations' asserted "integral connection" and "permanently connected" or sealed constructions are not supported by plain language of the claims or the specifications, by claims construction rules or claim differentiation, and

---

[8] Claim 13.

[9] Claim 25.

[10] Docket No. 128, Ex. A (Claims Chart), at 1.

[11] *Id.*

is undermined by Clinical Innovations' act in marketing a "non-integrated" catheter under the '524 patent.

The parties make a similar argument regarding the housing in dependent claims 2, 15, and 29, providing, respectively: "The catheter of claim 1, further including a housing;" "The interuterine catheter of claim 13, further including a housing;" "the pressure catheter of claim 25, further including a housing."

Clinical Innovations argues that these claims should be construed to mean:

> The claimed catheter (i.e. elongated tube) must include a housing. That is, the housing must be permanently connected to the elongated tube (or to a structure that includes the elongated tube), such as by being "sealed" to that tubing or to another integrated part of the catheter. In other words, the housing is effectively and physically an integrated part of the same structure as the elongated tube. The claim language excluded catheters that can be readily connected to, or disconnect from, the housing.[12]

Utah Medical argues that they should be construed to mean:

> A housing which is in fluid communication with the fluid channel has a port. The claim does not require an integral connection between the elongated tube and the housing.[13]

The Court finds that nowhere in the claims, specification, or preambles is the "integral" requirement sought to be added by Clinical Innovations found. Nor is the Court persuaded by Clinical Innovations' argument that because dependent claims 3, 16, and 30 (which depend from claims 1, 13, and 25) include "venting cap configured for attachment

---

[12] *Id.*, at 3.

[13] *Id.*

to said housing" that if the pressure detector and housing could be attached and detached, they would include similar language.

The Court finds Clinical Innovations' "integral connection" and "permanently connected" arguments to be unpersuasive. The Court agrees with Utah Medical that the claims do "not require an integral connection between the elongated tube and the structure for detecting changes in fluid pressure" and do "not require an integral connection between the elongated tube and the housing."

B.  Balloon Configurations

Claims 1, 13, and 25 provide, respectively: "a structure for detecting changes in fluid pressure external to said first, distal end of said elongated outer tube;"[14] "a pressure detection device for detecting pressure changes external to said distal end of said elongated outer tube;"[15] and "a pressure detection device associated with said second lumen of said elongated tube structure for detecting changes in fluid pressure external to said first end of said elongated tube structure."[16]

Clinical Innovations argues that these claim terms should be construed to mean:

> The catheter includes a structure that can detect, ascertain, or determine changes, alterations, or transformations in fluid pressure that exist outside the distal end of the catheter (such as the uterus). There are no limitations on the type of pressure detector or in its location in the catheter.[17]

---

[14] Claim 1.

[15] Claim 13.

[16] Claim 25.

[17] Docket No. 128 Ex. A (Claims Chart), at 3.

Utah Medical argues that they should be construed to mean:

The pressure being exerted against the exterior of the distal end of the tube is translated for detection using either an interior balloon, an exterior balloon, or an interior/exterior balloon. (The '529 patent has excluded at least sensor-tipped catheters, such as the accused device, from the scope of this claim limitation by asserting, for example, that they kill expectant mothers and their unborn babies).[18]

Because the specifications reveal the correct claim scope, including a disclaimer, and because the claims are means-plus-function limitations, the Court agrees that the claims are limited to balloon configurations for the following reasons:

    1.    Specification Disclaimer

Utah Medical contends that Clinical Innovations disclaimed sensor-tip configurations in the specifications of the '524 Patent and in the prosecution history.  Utah Medical contends that Clinical Innovations disclaimed sensor-tipped devices by its statements in the patent disparaging sensor-tipped devices.  Clinical Innovations disparaged the sensor-tip devices because, among other reasons: "they cause discomfort during insertion" and the "major disadvantage of inserting sensor-tipped IUP devices, as well as fluid-filled IUP devices, is the possibility of perforating the placenta or uterus as a result of the higher insertion force required to insert a larger tip . . . deaths have been reported of both fetuses and mothers from damage caused by insertion of sensor-tipped devices."[19]  Clinical Innovations also listed as disadvantages of sensor -tipped devices the tingling caused by the electrical current running to the sensor in the tip and difficulties in recalibration.

---

[18]*Id.*

[19]Col. 2, line 60 through Col. 3, line 5.

Clinical Innovations contends that the '524 patent, as a continuation of the application that became the '497 patent, which in turn, is a continuation-in-part of the '879 patent, must be considered as a family of patent application. It contends that to construe the '524 patent as limited to the balloon configuration would "totally vitiate" the patent.[20] It contends that the case *Ventana Medical Systems, Inc. v. Biogenex Laboratories, Inc*,[21] is squarely on point in its ruling that "general statements by the inventors" in the Background section should not, "without more, . . . be interpreted to disclaim every feature of every prior art device discussed in the 'BACKGROUND ART' section of the patent."[22]

Under the doctrine of specification disclaimer:

> "[T]he specification may reveal an intentional disclaimer, or disavowal, of claim scope by an inventor. In that instance, . . . the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive."[23]

---

[20]A position clarified by Clinical Innovations' counsel at argument.

[21]473 F.3d 1173 (Fed. Cir. 2006).

[22]*Id.* at 1181.

[23]*LG Electronics, Inc. v. Bizcom Electronics, Inc.*, 453 F.3d 1364, 1378 (Fed. Cir. 2006) (quoting *Phillips*, 415 F.3d at 1316 and citing *SciMed Life Sys. v. Advanced Cardiovascular Sys.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001)). In *LG Electronics*, the Court found that "because the statements relied upon by defendants relate to the invention not elected during prosecution, there is no clear disavowal with respect to the invention actually claimed" in the patent in suit.

In the situation of "an intentional disclaimer, or disavowal, of claim scope by the inventor,"[24] the Court "interprets the claim more narrowly than it otherwise would to give effect to the inventor's intent to disavow a broader claim scope."[25]

Further, the specification is always highly relevant to the claim construction analysis.

> In explaining the importance of referring to the specification in determining and understanding the meaning and scope of a patent claim, we have stated that "the specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" Furthermore, "the specification may reveal an intentional disclaimer, or disavowal, of claim scope by the inventor. In that instance as well, the inventor has dictated the correct claim scope, and the inventor's intention, as expressed in the specification, is regarded as dispositive."[26]

Having considered the entire patent, the Court finds that this is a case like *SciMed Life Systems*,[27] and *SafeTCare Mfg.*,[28] where we must "rely on the specification merely to understand what the patentee has claimed and disclaimed."[29] As explained in *SafeTCare*,

> We "recognize that the distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice." In this case, however, we are not in danger of importing any limitations from the specification into

---

[24]*Phillips*, 415 F.3d at 1316.

[25]*Ventana*, 473 F.3d at 1181 (citing *Phillips*, 415 F.3d at 1316).

[26]*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, __ F.3d __, ___, 2007 WL 2215718, *5 (Fed. Cir. August 3, 2007) (quoting *Phillips*, 415 F.3d at 1315-16).

[27]242 F.3d 1337 (Fed. Cir. 2001).

[28]*SafeTCare*, 2007 WL 2215718 at *6. *SafeTCare* was issued after argument in this case but did not announce a new rule of law. Instead, it applies the existing law as previously cited by the parties herein.

[29]*Id*.

[the claim]. Rather, we rely on the specification merely to understand what the patentee has claimed and disclaimed. [*Phillips*] (finding "the inventor's intention" to be "expressed in the specification"). In this case, the written description repeatedly emphasizes [an attribute]. The inventor makes clear that this attribute of the invention is important in distinguishing the invention over the prior art. Thus, we are persuaded by the language used by the patentee that the invention disclaims [the attribute distinguished].[30]

In the present case, the specifications repeatedly emphasize and discuss the balloon configuration and its attributes. The inventor makes it clear that the attributes of the balloon configuration are important in distinguishing the prior art. The prior art of the sensor-tipped configurations is clearly disparaged and disclaimed.

Reading the specifications, the Court is convinced that what is intended to be claimed are the attributes of the balloon configuration that are repeatedly described therein as important in distinguishing the invention over prior art. In contrast, the partially clear nature of the tube, emphasized at argument as the improvement added to the family of patents by the '524 patent, is referred to in the nature of an aside.[31]

Clinical Innovations also contends that sensor-tipped configurations are also described in the specifications because the use of a pressure transducer is described. However, the use of a pressure transducer is discussed in the specifications as used in combination with a balloon configuration is such a manner that it is not a sensor-tipped catheter that is described.[32]

---

[30]*Id.*

[31]*E.g.*, Col. 7, lines 10 to 15.

[32]*E.g.* Col. 6, lines 10 through 30; col. 12, lines 28-46; col. 2, lines 7-9 (prior art).

In sum, the Court finds that *Ventana* is distinguishable because the present case involves much more than "general statements by the inventors indicating that the invention is intended to improve upon prior art . . ."[33] The present case is one like *SafeTCare* where the Court in construing the claims is "relying on the specification merely to understand what the patentee has claimed and disclaimed."[34] The Court finds that the specification makes it clear that what was claimed is the balloon configuration and what was disclaimed is the sensor-tipped configuration. For this reason, the Court need not address the parties' arguments regarding prosecution history.

Accordingly, the Court construes "a structure for detecting changes in fluid pressure external to said first, distal end of said elongated outer tube;" "a pressure detection device for detecting pressure changes external to said distal end of said elongated outer tube;" and "a pressure detection device associated with said second lumen of said elongated tube structure for detecting changes in fluid pressure external to said first end of said elongated tube structure" in claims 1, 13, and 25 to mean "the pressure being exerted against the exterior of the distal end of the tube is translated for detection using either an interior balloon, an exterior balloon, or an interior/exterior balloon."

---

[33] *Ventana*, 473 F.3d at 1181.

[34] *SafeTCare*, 2007 WL 2215718, at *6.

2.	Means-Plus-Function

Utah Medical contends that the phrases "pressure detection device" and "a structure for detecting changes" are a means-plus-function limitation under § 112,[35] which provides:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.[36]

This section "operates to restrict claim limitations drafted in such functional language to those structures, materials, or acts disclosed in the specification (and their equivalents) that perform the claimed function."[37]

The parties agree that if the phrase does not contain the term "means," it is presumptively not subject to § 112.[38]  "However, a limitation lacking the term 'means' may overcome the presumption against means-plus-function treatment if it is shown that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function."[39]

---

[35] 35 U.S.C. § 112.

[36] *Id.*

[37] *Personalized Media Communications, LLC v. International Trade Com'n,* 161 F.3d 696, 703 (Fed. Cir. 1998).

[38] *Massachusetts Institute of Technology (MIT) and Electronics For Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1353 (Fed. Cir. 2006) (quoting *CCS Fitness Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002)).

[39] *Id.* (quoting *CCS Fitness*, 288 F.3d at 1369) (quotation marks omitted).

The parties rely on many of the same cases, such as *Lighting World, Inc. v. Birchwood Lighting, Inc.*,[40] and *Personalized Media Communications, LLC v. Int'l Trade Comm'n.*[41]

> In considering whether a claim term recites sufficient structure to avoid application of section 112, ¶ 6 we have not required the claim term to denote a specific structure. Instead, we have held that it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function.
>
> * * *
>
> Thus, while it is true that the term "connector assembly" does not bring to mind a particular structure, that point is not dispositive. What is important is whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term "means for." The court in *Personalized Media Communications* drew the pertinent distinction in holding that the term "detector," although broad, is still structural for purposes of section 112 . . . because it "is not a generic structural term such as 'means,' 'element,' or 'device'; nor is it a coined term lacking a clear meaning such as 'widget' or 'ram-a-fram.'"[42]

Utah Medical argues that terms such as "structure" and "pressure detection device" do not denote any particular structure. It also argues that it has rebutted the presumption by showing that the '524 patent uses the terms "pressure detection device" and "pressure

---

[40] 382 F.3d 1354, 1358 (Fed. Cir. 2004) (holding that "the presumption flowing from the absence of the term "means" is a strong one that is not readily overcome").

[41] 161 F.3d 696 (Fed. Cir. 1998).

[42] 382 F.3d at 1359-60 (citing and quoting *Personalized Media*, 161 F.3d at 704) (other citations omitted).

detection means" interchangeably.[43]   It contends that because the other structure disclosed in the specification for performing the pressure detection function is a balloon configuration, the claims are limited to that balloon configuration.

Clinical Innovations relies upon *Personalized Media's* holding that "detector," unlike the term "device" denotes a type of structure.[44]  It argues that a specific kind of structure is required—namely one for fluid pressure detecting, pressure detection, or fluid pressure detection.  It argues that under *Personalized Media*, adding a qualification in front of the noun "detector" does not render it insufficient for purposes of § 112.

"The task of determining whether the limitation in question should be regarded as a means-plus-function limitation, like all claim construction issues, is a question of law for the court . . ."[45]   The Court finds that the resolution of this issue depends upon the noun that is being qualified.  The noun "device" is a "generic structural term."[46]   So, too, is the noun "structure."  As such they are not sufficient to preclude application of § 112. Detector, is of course, "a sufficiently definite structural term to preclude the application" of § 112.[47]  But, in the instant case, the claims involve the nouns "device" and "structure," not the noun "detector."  Unlike *Personalized Media*, where an adjectival qualification (digital) was

---

[43] Citing *Lightening World*, 156 F.3d at 1362 and citing the '524 patent col. 3, lines 44-50 (Summary of Invention referencing "pressure detection device" and "pressure detection means").

[44] 161 F.3d at 704.

[45] *Lighting World*, 382 F.3d at 1358.

[46] *Personalized Media*, 161 F.3d at 704.

[47] *Id*. at 705.

added to "an otherwise sufficiently definite structure" (detector); in the present case the qualification (pressure detecting) is added to an otherwise insufficiently definite structure—"device" or "structure."

The claims do not use the phrase "pressure detector." Instead, they use the phrases "pressure detecting device" and "structure for detecting pressure"—phrases that describe a function, not a definite structure. By using the phrase "pressure detecting device," which does not identify a definite structure, Clinical Innovations has included not just the definite structures known as detectors, but also any indefinite structure or device that arguably performs that function, a means plus function limitation.

Having carefully considered the nuanced case law in this area, the Court finds that the use of the phrases "pressure detection device" and "a structure for detecting changes" is a means-plus-function limitation under § 112. The function disclosed is detecting pressure. Because the only structures disclosed in the '524 Patent are balloon configurations, the Court construes the claims as limited to balloon configurations and their equivalents.

C.     About a 75 Degree Arc

Claims 10, 23, and 38 provide, respectively: "light-transmisive material extends through about a 75 arc circumferentially;" "extends through about a 75 degree arc circumferentially of said elongated outer tube wall;" and "light transmissive window extends through about a 75 arc circumferentially of said wall."

Clinical Innovations argues that these claim terms should be construed to mean:

15

The light-transmissive material extends only to about, approximately, or in the vicinity of a 75 degree arc around the tube. The material cannot extend to any materially greater amount, such as 100 degrees or all the way around the tube.[48]

Utah Medical argues that they should be construed to mean:

At least one of the windows that is made of light-transmissive material extends through a circumferential 75 degree arc of the outer tube circumferential wall. Any completely transparent device includes an arc of about 75 degrees, such as a totally clear tube.[49]

The Court finds that "about" is so commonly understood a term that these claim terms need little or no construction. When used with numbers, "about" means "nearly, approximately; not many more or less"[50] or "reasonably close to."[51] No matter what dictionary is used, "about a 75 degree arc" cannot mean something that includes "a 360 degree arc." The Court finds Utah Medical's arguments to the contrary to be unpersuasive.

The Court construes these claim terms to mean "the light-transmissive material cannot extend to any materially greater amount such as all the way around the tube."

### III.  Summary Judgment

Having construed the claims, the Court turns to the cross motions for summary judgment on literal infringement. The standard for summary judgment in a literal infringement case is the same as for any other case. The Court having construed the

---

[48] Claims Chart, at 6.

[49] *Id.*

[50] Oxford English Dictionary Online, s.v. "About," http://dictionary.oed.com (Last visited September 11, 2007).

[51] Merriam-Webster's Online Dictionary, www.M-W.com  s.v. "About" (last visited September 11, 2007).

claims, it then determines whether the "properly construed claim encompassed the accused structure."[52]

> A literal infringement issue is properly decided upon summary judgment when no genuine issue of material fact exists, in particular, when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.[53]
>
> Once a means-plus-function claim is construed, literal infringement is analyzed by determining whether "the accused device employs structure identical or equivalent to the structure disclosed in the patent and . . . the accused device performs the identical function specified in the claim." That question is one of fact. Therefore, summary judgment of noninfringement requires a conclusion "that no reasonable jury could have found otherwise."[54]

The Court finds that there are no issues of fact on literal infringement of the properly construed claims. It is undisputed the accused devices do not have balloon configurations. Therefore, no reasonable jury could find literal infringement of the claims as construed. Thus, Clinical Innovations cannot establish literal infringement of the '524 patent and summary judgment on literal infringement in Utah Medical's favor is appropriate. For the same reason, Clinical Innovation's Motion for Summary Judgment on literal infringement must be denied.

It is not clear if the remaining issues submitted by the parties on claim construction are not necessary for the remaining issue for trial. To the extent that the parties believe

---

[52] *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (10th Cir. 1998)

[53] *Id.*

[54] *NMT Medical, Inc. v. Cardia, Inc.* 2007 WL 1655232, *3 (Fed. Cir. 2007) (quoting WMS Gaming Inc. v. Int'l Game Tech., 184 F.3d 1339, 1351 (Fed.Cir.1999) and *NMT Medical, Inc. v. Cardia, Inc.*, 2007 WL 1655232, *3 (Fed. Cir. 2007)).

that they will be at issue at trial, they should so inform the Court at the final pretrial conference.

## IV.  ORDER

Based on the foregoing, it is therefore,

ORDERED that the terms "a catheter for detecting changes in pressure within a body comprising . . . a structure for detecting changes in fluid pressure;" "an interuterine pressure catheter comprising . . . a pressure detection device;" and "a pressure catheter for detecting changes in pressure within a body comprising . . .  a pressure detection device," as used in claims 1, 13, and 25 is construed to mean the following: "A catheter that is used to detect pressure changes within a body. The claim does not require an integral connection between the elongated tube and the structure for detecting changes in fluid pressure."  It is further

ORDERED that the terms: "The catheter of claim 1, further including a housing;" "The interuterine catheter of claim 13, further including a housing;" "the pressure catheter of claim 25, further including a housing" as used in claims 2, 15, and 29, is construed to mean the following: "A catheter that is used to detect pressure changes within a body. The claim does not require an integral connection between the elongated tube and the structure for detecting changes in fluid pressure."  It is further

ORDERED that the terms: "a structure for detecting changes in fluid pressure external to said first, distal end of said elongated outer tube;" a pressure detection device for detecting pressure changes external to said distal end of said elongated outer tube;" and "a pressure detection device associated with said second lumen of said elongated

tube structure for detecting changes in fluid pressure external to said first end of said elongated tube structure" as used in claims 1, 13, and 25 is construed to mean "the pressure being exerted against the exterior of the distal end of the tube is translated for detection using either an interior balloon, an exterior balloon, or an interior/exterior balloon."  It is further

ORDERED that the term "about a 75 degree arc" as used in claims 10, 23, and 38 is construed to mean "the light-transmissive material cannot extend to any materially greater amount such as all the way around the tube."  It is further

ORDERED that Utah Medical's Cross-Motion for Summary Judgment on Non-Infringement is GRANTED.  It is further

ORDERED that Clinical Innovation's Motion for Summary Judgment on Infringement is DENIED.

DATED  September 11, 2007.

BY THE COURT:

_____
TED STEWART
United States District Judge